96 F.3d 1430
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
John J. SULLIVAN, Plaintiff, Appellant,
v.
CORRECTIONS, ME. WARDEN, Defendant, Appellee.
 No. 96-1270.
 United States Court of Appeals, First Circuit.
 Sept. 16, 1996.
 
 John J. Sullivan on brief pro se.
 Andrew Ketterer, Attorney General, Diane Sleek and Thomas Warren, Assistant Attorneys General, on brief for appellee.
 Before SELYA, CYR and BOUDIN, Circuit Judges.
 
 
 1
 PER CIRIAM.
 
 
 2
 John J. Sullivan, a New Hampshire state prisoner, appeals pro se from the grant of summary judgment in favor of defendant Martin Magnusson, former Warden of the Maine State Prison. We affirm.
 
 
 3
 On October 12, 1995, Sullivan filed a 42 U.S.C. § 1983 complaint seeking damages against Magnusson for violation of his rights under the First Amendment. The complaint alleges that Sullivan was housed at the Maine State Prison between September 30, 1988 and December 16, 1993. The complaint further alleges that on the latter date, Sullivan was transferred from the Maine State Prison back to the New Hampshire State Prison in retaliation for Sullivan's writing a newspaper column for the Maine Times.
 
 
 4
 On February 1, 1996, Magnusson moved for summary judgment. The motion was supported by an affidavit of Magnusson attesting that he transferred Sullivan because Sullivan's complaints that he deserved certain employment positions (held by other prisoners) due to what Sullivan considered to be his superior abilities had resulted in staff becoming increasingly unwilling to employ Sullivan and other prisoners becoming increasingly unwilling to work with him. Magnusson further attested that he began to receive reports that the situation had deteriorated to the point that Sullivan's personal safety was at risk from other prisoners. Sullivan filed an opposition supported by his own sworn statement and by various documents. An additional cross-round of filings followed. On February 20, 1996, summary judgment entered in favor of defendant Magnusson. This appeal followed.
 
 
 5
 Appellees do not dispute, and we assume, that Sullivan's writing a newspaper column for the Maine Times enjoys First Amendment protection. Cf. Nolan v. Fitzpatrick, 451 F.2d 545, 547 (1st Cir.1971) (striking down ban on prisoner letters to news media insofar as the letters concerned prison matters). It is well established that a prisoner may not be transferred from one institution to another for engaging in constitutionally protected activity. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979). However, if taken for both permissible and impermissible reasons, state action may be upheld if the action would have been taken based on permissible reasons alone. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996); Goff v. Burton, 7 F.3d 734, 737 (8th Cir.1993); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991); see also McDonald, 610 F.2d at 18 (observing that to succeed on a retaliatory transfer claim, a prisoner must prove that he would not have been transferred "but for" the alleged improper reason).
 
 
 6
 Upon de novo review of the district court record, we are persuaded that judgment properly entered in favor of defendant Magnusson.[1] Arguably, the chronology of events and the fact that Sullivan's writings were sometimes critical of prison officials support an inference that his column was a motivating factor in the transfer decision. However, Magnusson submitted evidence that he had a proper motive for the transfer (namely, concern for Sullivan's safety), and that Sullivan would have been transferred anyway. None of the evidence submitted by Sullivan controverts this evidence of a legitimate motive. Indeed, Sullivan's admissions that he considers himself to have "superior ability[ ] compared with most inmates and staff," and that at least some staff members at the Maine State Prison were unwilling to employ him (though Sullivan suggests this was due to jealousy on their part) are consistent with Magnusson's claims. Under the circumstances, we do not think there is a genuine issue as to the fact that Sullivan would have been transferred regardless of his newspaper column.
 
 
 7
 We add that if Sullivan needed additional information to adequately respond to Magnusson's motion for summary judgment, he could have requested a continuance to permit further discovery. See Fed.R.Civ.P. 56(f). His failure to do so precludes any argument on appeal that he was "railroaded." See de la Torre v. Continental Ins. Co., 15 F.3d 12, 15 (1st Cir.1994).
 
 
 8
 Affirmed.
 
 
 
 [1]
 The parties devote much of their respective briefs to arguing that the other side's evidence should have been stricken from the record or disregarded. Since it would not alter our disposition, we need not resolve all of these disputes. In our disposition, we assume without deciding that all of the evidence Sullivan filed in the district court--though not the evidence submitted for the first time on appeal--should be considered. Sullivan's claim that Magnusson's affidavit is too conclusory is waived because it was never presented to the district court. However, we assume for the sake of argument that his last-minute filing, on February 20, 1996, preserved his remaining objections to Magnusson's affidavit (hearsay and lack of personal knowledge). This latter assumption gains Sullivan very little. To the extent that Magnusson's affidavit reports statements made by others, they may be considered as evidence of what Magnusson heard or was told about Sullivan. See Fed.R.Evid. 801(c); Lane v. Griffin, 834 F.2d 403, 407 (4th Cir.1987). Magnusson, at the very least, had personal knowledge of what was said to him if not the underlying facts. It is the former which is most relevant to the issue of his motive